UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X

KENDELL WARD, JAMES RESHARD, JOHN
COUTARD, MARK RODRIGUEZ, GERARD
SCHAEFER, JOSEPH ZAINO, LETITIA SAINT-LOUIS,
PAUL SICILIANO, and MICHAEL DAUGHERTY,

                                Plaintiffs,

                  v.

LONG ISLAND RAIL ROAD COMPANY, and
TRANSPORTATION COMMUNICATIONS UNION,

                                Defendants.

----------------------------------------------------------------- X

**14 CV 8263**

JUDGE ABRAMS

**COMPLAINT AND JURY DEMAND**

U.S. DISTRICT COURT
FILED
OCT 15 2014
S.D. OF N.Y.

      Plaintiffs, by their undersigned attorneys, as and for their complaint, allege as follows:

## INTRODUCTION

      1.      This is an action by employees of Long Island Rail Road Company, for injunctive relief and damages whose seniority roster was revised in violation of the collective bargaining agreement and longtime past practice and whose union, Transportation Communications Union, refused to appeal this change through a contractual grievance procedure for reasons which are arbitrary, discriminatory, or in bad faith.

## JURISDICTION AND VENUE

      2.      This Court's jurisdiction is invoked pursuant to 45 USC § 153.

      3.      Long Island Rail Road Company is a "carrier" within the definition of the Railway Labor Act, 45 U.S.C. § 151 (First) ("RLA").

      4.      Venue is proper in the Southern District of New York because a "substantial part of the events or omissions giving rise to the claims occurred here, 28 U.S.C. § 1391(b)(2).

## PARTIES

5.     Defendant Long Island Rail Road Company ("LIRR") is, and at all relevant times was, a public benefit corporation formed under the laws of the State of New York as a wholly owned subsidiary of the Metropolitan Transportation Authority. LIRR maintains a principal place of business in the County of Queens, State of New York. LIRR is an employer whose employment of employees is governed by the RLA.

6.     Defendant Transportation Communications Union ("TCU"), a union, is the collective bargaining agent for Assistant Stationmasters, and other "employees" (see 45 U.S.C. § 151 (Second)) employed by LIRR throughout New York State. It is headquartered at 424 West 33rd Street, New York, NY 10001.

7.     Plaintiff Kendell Ward was, at all relevant times, an employee of LIRR, and was represented for collective bargaining purposes by TCU.

8.     Plaintiff James Reshard was, at all relevant times, an employee of LIRR, and was represented for collective bargaining purposes by TCU.

9.     Plaintiff John Coutard was, at all relevant times, an employee of LIRR, and was represented for collective bargaining purposes by TCU.

10.     Plaintiff Mark Rodriguez was, at all relevant times, an employee of LIRR, and was represented for collective bargaining purposes by TCU.

11.     Plaintiff Gerard Schaefer was, at all relevant times, an employee of LIRR, and was represented for collective bargaining purposes by TCU.

12.     Plaintiff Joseph Zaino was, at all relevant times, an employee of LIRR, and was represented for collective bargaining purposes by TCU.

13.     Plaintiff Letitia Saint-Louis was, at all relevant times, an employee of LIRR, and was represented for collective bargaining purposes by TCU.

14.     Plaintiff Paul Siciliano was, at all relevant times, an employee of LIRR, and was represented for collective bargaining purposes by TCU.

15.     Plaintiff Michael Daugherty was, at all relevant times, an employee of LIRR, and was represented for collective bargaining purposes by TCU.

## FACTS RELEVANT TO CLAIMS

16.     "Exception 5" is a classification of employees working within the TCO bargaining unit at LIRR.

17.     Prior to April 15, 2014 the seniority roster used for job picks within the "Exception 5" workers at LIRR was a departmental roster, with seniority being on the basis of time within the department, in this case, the Assistant Stationmaster department.

18.     This practice has been in place for almost thirty years.

19.     The seniority roster dictates that order in which assistant station masters pick their shift patterns, job assignments, vacations and overtime.

20.     The pick based on this new roster took place on April 15, 2014 and went into effect on April 23, 2014.

21.     There are approximately 23 Assistant Station Masters within this department.

22.     The relevant date for the calculation of seniority is 6 months from the start date in this department, when special training has been completed.

23.     The Assistant Station Masters have always picked their job pursuant to their own seniority roster, in accordance with this start date, and never calculated seniority on the basis of time at LIRR, but within this department. (see Exhibit A).

24.     The result of this change in seniority roster was that a new entrant to this department "jumped" over employees who have been in the department longer and was put in a higher position on the seniority list, thereby resulting in preferential treatment in job selection.

25.     The seniority roster past practice was ignored simply to give a preference to Charlie Quinn because he was a relation of a union official.

26.     On May 2, 2014 Assistant Stationmaster James Reshard wrote to William Decarlo, representative at TCU and to Robert Free, General Superintendent – Transportation at LIRR appealing the new seniority roster stating that it violated Rule 8 (a) and (d) of the Collective Bargaining Agreement between LIRR and Exception 5 Employees, which encompasses Assistant Station Masters. (see Exhibit B).

27.     Rule 8 is the provision of the CBA governs seniority rosters (see Exhibit C).

28.     The new roster was not revised as of January 1, 2014 as per the CBA but the revised roster was produced on March 5, 2014.[1] In addition, there was no note placed on the roster stating the time limit for filing a protest about the roster.

29.     LIRR responded to the May 2, 2014 letter stating that the complaint should be made through TCU (see Exhibit D), but TCU maintain that they did not receive it, even though it was signed for at their offices on May 5, 2014 (see Exhibit E).

30.     On July 11, 2014 James Reshard again wrote to TCU, grieving the new seniority roster (see Exhibit F).

31.     On July 15, 2014 William Decarlo, National Representative at TCU responded to Kendell Ward, Assistant Station Master. (See Exhibit G.) DeCarlo, in sum, stated that contrary to past practice, all of the LIRR was a "single seniority district." DeCarlo did not discuss the past

---

[1] The pick on the basis of this revised roster took place on April 15, 2014.

practice and its impact on the ambiguous term "single seniority district," nor did he discuss the inequities of a new Station Master jumping over others with years of experience.

32.    On July 19, 2014 Kendell Ward wrote to TCU Vice president, Arthur Maratea complaining that representative Dicarlo was not fairly representing the Assistant Station masters and asking for a response from the vice president directly. (see Exhibit H).

33.    On August 11, 2014 James Reshad again wrote to TCU, this time to James Figueroa, Union Representative upon the suggestion of National V.P. Arthur Maratea (see Exhibit I).

34.    On August 11, 2014 James Figuero responded to Reshad's letter, affirming DeCarlo's position (see Exhibit J) stating that the union was "upholding the controlling agreement" and completely overlooked the practice of an Assistant Station Master only roster for picks, a practice that has been in operation for nearly 30 years.

35.    The TCU at all times has arbitrarily ignored the fact in all of their correspondence to the complaining assistant station masters, and has completely turned a blind eye to the fact that this change occurred in the context of a relative of a union official being given special priority.

36.    By acting discriminatorily and in bad faith, and by covering their bad-faith actinos with what, on its face, is the simple reading of the CBA, TCU has breached its duty of fair representation.

37.    Plaintiffs have exhausted all available internal union remedies.

## AS AND FOR A FIRST
## CAUSE OF ACTION

38.     By allowing a job pick to occur outside of the historically recognized seniority system, LIRR has breached the collective bargaining agreement.

## AS AND FOR A SECOND
## CAUSE OF ACTION

39.     TCU's posting of a seniority list for ASMs which allowed a new ASM to pick ahead of a longtime ASM and the union's refusal to reverse this action was a breach of the TCU's duty of fair representation.

## DAMAGES

40.     As a proximate result of defendants' wrongful acts, Plaintiffs have suffered a loss of wages, a loss of benefits and overtime, and loss of seniority.

## JURY DEMAND

41.     Plaintiffs demand a jury trial on all claims

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this court enter judgment against defendants, jointly and severally, ordering:

a.     injunctive relief in the form of restraining the use of the new roster;

b.     reinstatement of the Assistant Station Master seniority roster;

c.     a new job pick in accordance with that roster;

d.     payment of lost overtime for those on the list whose seniority was reduced on this new list;

e.     reimbursement of any losses caused by loss of benefits;

f.   awarding such other and further relief as is just and equitable; and

g.   directing payment of attorneys fees, costs and expenses.

Dated: New York, New York
       October 15, 2014

ADVOCATES FOR JUSTICE,
CHARTERED ATTORNEYS
Attorneys for Plaintiff

By:_____
   Arthur Z. Schwartz (AZS 2683)
   Tracey L. Kiernan
   225 Broadway, Suite 1902
   New York, New York  10007
   Tel.: (212) 285-1400
   Fax: (212) 285-1410
   Email: aschwartz@afjlaw.com

# EXHIBIT A

REVISED: 10/8/2013 1:38 PM

STATIONMASTER GENERAL PICK (PREFERENCE)
CONDUCTED OCTOBER 8, 2013 - EFFECTIVE OCTOBER 23, 2013

| NAME | SEN. DATE | PREFERENCE | COMMENTS |
|---|---|---|---|
| J. Ryan | 6/1/86 | RASM-1 | Called in at 11:00A |
| F. Degiulio | 2/15/89 | BASM-1 | Called in at 11:04A |
| D. Ware | 2/24/93 | PIO-3 | Called in at 11:05A |
| C. Teresky | 6/10/98 | PIO-1A | Called in at 11:07A |
| J. Reshard | 8/2/99 | BASM-2 | Called in at 11:09A |
| S. Coppola | 3/27/02 | JASM-1 | Called in at 11:14A |
| J. Coutard | 12/18/02 | RASM-2 | Called in at 11:28A |
| W. Gunnell | 4/23/03 | PIO-1 | Called in at 11:33A |
| S. Berry | 4/23/03 | N1 | Called in at 11:34A |
| M. Daugherty | 6/30/03 | PASM-1 | Called in at 11:37A |
| J. Powell | 10/15/03 | PASM-2 | Called in at 11:38A |
| C. Barrett | 12/27/06 | XASM-1 | Called in at 11:45A |
| R. Russo | 2/20/08 | PIO-2A | Called in at 12:00P |
| K. Ward | 6/11/08 | RASM-4 | Called in at 12:03P |
| I. Walsh | 7/12/08 | RASM-3 | Called in at 12:06P |
| St. Louis | 4/17/09 | JASM-2 | Called in at 12:09P |
| Miller | 1/18/12 | JASM-3 | Called in at 12:12P |
| Rodriguez | 1/9/13 | PASM-3 | Called in at 12:16P |
| Schaefer | 1/9/13 | XASM-2 | Called in at 12:31P |
| Dwyer | 1/9/13 | PIO-2 | Called in at 12:38P |
| Siciliano | 1/9/13 | XASM-3 | Called in at 12:39P |
| Quinn | 2/13/13 | DID NOT PICK | TRAINING NOT COMPLETE |

# EXHIBIT B

Mr. William Decarlo
International Representative
Transportation Communications Union

Mr. Robert F. Free
General Superintendent-Transportation
Long Island Rail Road

May 2, 2014

Dear Sirs,

The Assistant Stationmasters for the Long Island Rail Road are submitting this letter to appeal the revised TCU Exception 5 seniority roster dated March 5, 2014. We are also requesting the continued legitimacy of the Assistant Stationmaster seniority roster as an extension of the TCU Exception 5 roster.

According to the TCU Exception 5 agreement, this roster was not issued in accordance with Rule 8, paragraphs (a) and (d), and should be ruled null and void.

Paragraph (a) states, "A roster showing seniority dates of employees will be revised as of January 1, and posted January of each year in places accessible to employees affected." Paragraph (d) states, "A note shall be placed on each roster stating the time limit for filing protest thereto."

This roster was issued on March 5, 2014, and has omitted the note which is to be placed within the document indicating the time limit for filing an appeal. Therefore, we are asking that this revised TCU Exception 5 roster be considered invalid.

Additionally, we ask that you recognize the Assistant Stationmaster seniority roster as an extension of the TCU Exception 5 roster with its own validity.

The Long Island Rail Road and the TCU have long honored our roster, while we were an appointed craft and more importantly, for the last two years as our jobs were awarded by the Crew Department according to the Assistant Stationmaster seniority roster.

Despite past practices upheld by the TCU and the Long Island Rail Road, representatives of the TCU now state that the only valid roster is the TCU Exception 5 roster, and that we should be governed according to that publication only. Under the TCU Exception 5 Agreement however, it is questionable which rule applies to this claim.

We are respectfully confident that a proper resolution will be reached concerning these matters: the nullification of the TCU Exception 5 roster dated March 5, 2014, and the continued validity of the Assistant Stationmaster seniority roster as a separate entity.

Thank you for your consideration,


James Reshard
Assistant Stationmaster Representative

# EXHIBIT C

## RULE 5
### Assignments Starting In Advance Of Midnight, At Midnight

(a)  All assignments with a tour of duty starting in advance of midnight on any given day which includes working hours after midnight are considered assignments of the day the tour begins.

(b)  A tour of duty starting at 12:00 midnight will be considered as work performed on the following day.

(c)  Principles set forth in paragraphs (a) and (b) of this Rule are also applicable in the case of the twelve (12) specified holidays and the days in advance thereof.

## RULE 6
### Meal Period

(a)  A meal period which shall be continuous will be established for each position between the third and fifth hours after starting time, with full release from duty during such meal period.

(b)  When an employee is required to work overtime after completion of his/her regular tour of duty, he/she shall not be required to render service for more than two (2) hours immediately following and continuous with regular workday hours without being permitted to eat except in cases of emergency when the nature of the work will not permit stopping to eat.  When emergency conditions prevent stopping to eat at or before the expiration of such two (2) hours overtime, employee shall be allowed time to eat at the first opportunity.  Time so taken for meals will not terminate the continuous service period and will be paid for up to thirty (30) minutes.

## RULE 7
### Seniority District

The Long Island Rail Road shall constitute a single seniority district.

## RULE 8
### Seniority Roster

(a)  A roster showing seniority dates of employees will be revised as of January 1, and posted January of each year in places accessible to employees affected.  Copy will be furnished to the General Chairman and Local Chairmen.

(b)  Employees' seniority as shown on roster will be open to protest in writing for a period of sixty (60) days from the date the employee's name first appears on the roster, except that in case an employee is off duty on leave of absence, furlough, sickness, disability or suspension at the time the roster is posted, such employee will have sixty (60) days from the date he/she returns to duty to enter protest.  Seniority of employees not protested, in writing, within the above specified time limits will be deemed to have been accepted as correct and not subject to further appeal, except to correct typographical errors or to restore names which appeared on the preceding roster and which were omitted in error.

(c)  No change on seniority rosters will be made by the management without concurrence with the General Chairman.

(d)  A note shall be placed on each roster stating the time limit for filing protest thereto.  Necessary corrections on a roster shall be made on the next issue thereof.

(e)  Employees who were members of this seniority district on March 25, 1983, or became members subsequent to March 25, 1983, and are thereafter promoted to non-represented management positions are precluded from voluntarily returning to a position within this seniority district.

In instances where a promoted employee is involuntarily removed from a promoted position as a result of a job abolishment or disqualification for other than medical reasons, the Carrier will place the employee in a position within this seniority district but not necessarily in the position from which the employee was promoted.

(f)  Seniority of employees holding positions under this Agreement on June 1, 1985, shall date from the earliest date upon which they last entered continuous service in the group.

6

# EXHIBIT D

Patrick A. Nowakowski

 Long Island Rail Road

May 21, 2014

James Reshard 28466
Assistant Station Master
73 Pearsall Ave
Freeport, NY 11520

Dear Mr. Reshard,

We are in receipt of your May 2, 2014 letter.  We understand your concerns and they have been reviewed. However, please be advised that issues regarding the collective bargaining agreement should be handled through your union representative, so they can be properly addressed.

Sincerely,

Robert F. Free
Acting Chief Transportation Officer

cc: William DeCarlo
    Vincent Campasano
    Monu Singh

# EXHIBIT E

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr Robert Free

Long Island RR
Jamaica Station
Jamaica NY 11433
Mail Code 1122

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Michael Raman_   ☐ Agent  ☐ Address

B. Received by (Printed Name)   C. Date of Deliv
_AKE Raman_

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Certified Mail®   ☐ Priority Mail Express™
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7014 0510 0000 7146 0971

PS Form 3811, July 2013   Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr William DeCarlo

424 West 33rd St Ste 2
NY NY 10001

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☐ Agent  ☐ Address

B. Received by (Printed Name)   C. Date of Deliv

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Certified Mail®   ☐ Priority Mail Express™
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7014 0510 0000 7146 0967

PS Form 3811, July 2013   Domestic Return Receipt

# EXHIBIT F

Mr. Arthur Maratea
National Vice President
Transportation Communications Union

July 11, 2014

Dear Sir,

We, Assistant Stationmasters, are submitting this grievance to you to appeal the revised TCU Exception 5 seniority roster dated March 5, 2014. We are also requesting that the legitimacy of the Assistant Stationmaster seniority roster continue to be honored as an extension of the Exception 5 roster - as the TCU has done so in past practices.

A jointly mailed letter, dated May 2, 2014, was sent to the Long Island Rail Road and to International Representative William DeCarlo on May 5, 2014. While the Long Island Rail Road has replied, suggesting that we pursue a resolution from our union, we have not received a response from Mr. DeCarlo.

As this union has recognized the Assistant Stationmaster seniority roster in past practices, we request that the next TCU Exception 5 roster revision reflect the legitimate start date of all Assistant Stationmasters according to their hire date within our department.

Our roster has been sanctioned by the LIRR and TCU for many years while we were an appointed craft and more importantly, for the last two years where our jobs have been awarded by the Crew Department according to the Assistant Stationmaster seniority roster, even as recently as October 2013.

After our vacation pick in November 2013, we were notified by TCU representatives that one of the newly qualified stationmasters would have the privilege of re-selecting his vacation ahead of other stationmasters due to his TCU start date. We were assured that this decision had no consequence on his standing at the next General Pick scheduled for March 2014.

At the same time, another newly qualified stationmaster, also with previous TCU Exception 5 membership was not offered this privilege, and was made to pick vacation according to the LIRR and TCU sanctioned Assistant Stationmaster seniority roster.
Please note that with a union representative present in October 2013, this same individual was made to pick his job - which we are to hold for six months - according to the same ASM roster that has been in place for years.

It was not until immediately before the last General Pick in March 2014, that it was declared by some officials within your organization that the TCU will suddenly disregard our internal roster, in a move seemingly arranged to benefit the one individual who was awarded higher seniority for the vacation pick.

Despite past practices, TCU delegates now state that the only valid roster is the TCU Exception 5 roster, and that we should be governed according to that publication only. Under the agreement however, it is questionable which rule applies to this claim. And as result, the prospects for other stationmasters to obtain a higher seniority within the department are shattered because any newly promoted individual with time within the TCU will be given the privilege of advancing to the top of our roster without merit.

Furthermore, according to the TCU Exception 5 agreement, the March 5 roster was not issued in conformity with Rule 8, paragraphs (a) and (d).

Paragraph (a) states, "A roster showing seniority dates of employees will be revised as of January 1, and posted January of each year in places accessible to employees affected." Paragraph (d) states, "A note shall be placed on each roster stating the time limit for filing protest thereto."

This roster was issued on March 5, 2014, and has omitted the note which is to be placed within the document indicating the time limit for filing an appeal. For these reasons, we are asking that this revised TCU Exception 5 roster be ruled null and void.

We are respectfully confident that you will review these claims and a proper resolution will be reached.

Thank you for your consideration,


James Reshard
Assistant Stationmaster Representative

# EXHIBIT G

-------- Original message [via email] --------
From: "DeCarlo, William"
Date:07/15/2014 1:02 PM (GMT-05:00)
To: kenward360 , "Maratea, Arthur"
Cc: JAMES FIGUEROA
Subject: RE:

Kendall,

This is in your response to your July 12, 2014 email.  Your request to have a separate seniority roster for the ASM's is in direct conflict with Rule 7 of the controlling Agreement.  This Rule states: The Long Island Rail Road shall constitute a single seniority district.  The TCU until recently was unaware of any violation of the Agreement in force.  When it became known to us we have an obligation to correct any of these violations.  Rule 9 states that the seniority of an employee entering service in a position (covered by this Agreement) on or after the effective date of this Agreement shall date from the day and hour his/her pay starts in such position.  In your email you also state that the jobs were awarded by Crew Department as recently as October 2013.  That is correct.  While we were made aware of the previous exception 5 roster spot of the "new ASM", we did not allow him to pick his job with that seniority date because at the time of the pick he was not qualified as an ASM. With regards to the change in the March 2014 pick, the ASM now was qualified and was allowed to pick with his TCU Exception 5 seniority. You are also correct that the ASM re-selected his vacation picks after we were notified by him of the violation of Rule 7.  The Carrier did not "bump" any of the other ASM's out of their vacation picks.  We negotiated with the Carrier for an additional slot for the weeks his seniority would have allowed him to select.  There was no adverse impact to accommodate the individual. You also state in your email an unnamed  newly qualified  ASM was not afforded the ability to pick with his previous Exception 5 seniority.  That ASM received all the picks he requested.  He only "jumped" one ASM so there was little change for him.  For the record we did not hear from that ASM as he was satisfied with the process. I hope this answers any issues you have with the seniority of ASM's.

Thank you,
William DeCarlo
National Representative
Unit 167

# EXHIBIT H

---------- Forwarded message ----------
From: **kenward360** <kenward360@gmail.com>
Date: Saturday, July 19, 2014
Subject: Fwd: RE: 2nd request
To: "MarateaA@tcunion.org" <MarateaA@tcunion.org>

Arthur,

I still have yet to receive a response to the email that was sent to you on July 12, 2014
As I do not feel that I'm being fairly represented by Mr DiCarlo I would very much like to receive a response from you as my national vice president. if you are unable to assist me with some remedy to my issue please direct me to the higher official that I may contact.

Thank
Kendell T. Ward

# EXHIBIT I

Mr James Figueroa
Union Representative
Transportation Communications Union

August 11, 2014

Dear Sir,

We, Assistant Stationmasters, are submitting this grievance to you to appeal the revised TCU Exception 5 seniority roster dated March 5, 2014. We are also requesting that the legitimacy of the Assistant Stationmaster seniority roster continue to be honored as an extension of the Exception 5 roster - as the TCU has done so in past practices.

Please note that this is the third letter submitted regarding this issue. The most recent letter dated July 11, 2014 was addressed to Mr. Arthur Maratea who stated that this grievance should be directed to your attention. Our first letter, dated May 2, 2014, was sent to the Long Island Rail Road and to International Representative William DeCarlo on May 5, 2014. While the Long Island Rail Road replied, suggesting that we pursue a resolution from our union, we did not receive a formal response from Mr. DeCarlo.

As this union has recognized the Assistant Stationmaster seniority roster in past practices, we request that the next TCU Exception 5 roster revision reflect the legitimate start date of all Assistant Stationmasters according to their hire date within our department.

Our roster has been sanctioned by the LIRR and TCU for many years while we were an appointed craft and more importantly, for the last two years where our jobs have been awarded by the Crew Department according to the Assistant Stationmaster seniority roster, even as recently as October 2013.

After our vacation pick in November 2013, we were notified by TCU representatives that one of the newly qualified stationmasters would have the privilege of re-selecting his vacation ahead of other stationmasters due to his TCU start date. We were assured that this decision had no consequence on his standing at the next General Pick scheduled for March 2014.

At the same time, another newly qualified stationmaster, also with previous TCU Exception 5 membership was not offered this privilege, and was made to pick vacation according to the LIRR and TCU sanctioned Assistant Stationmaster seniority roster.
Please note that with a union representative present in October 2013, this same individual was made to pick his job - which we are to hold for six months - according to the same ASM roster that has been in place for years.

It was not until immediately before the last General Pick in March 2014, that it was declared by some officials within your organization that the TCU will suddenly disregard our internal roster, in a move seemingly arranged to benefit the one individual who was awarded higher seniority for the vacation pick.

Despite past practices, TCU delegates now state that the only valid roster is the TCU Exception 5 roster, and that we should be governed according to that publication only. Under the agreement however, it is questionable which rule applies to this claim. And as result, the prospects for other stationmasters to obtain a higher seniority within the department are shattered because any newly

promoted individual with time within the TCU will be given the privilege of advancing to the top of our roster without merit.

Furthermore, according to the TCU Exception 5 agreement, the March 5 roster was not issued in conformity with Rule 8, paragraphs (a) and (d).

Paragraph (a) states, "A roster showing seniority dates of employees will be revised as of January 1, and posted January of each year in places accessible to employees affected." Paragraph (d) states, "A note shall be placed on each roster stating the time limit for filing protest thereto."

This roster was issued on March 5, 2014, and has omitted the note which is to be placed within the document indicating the time limit for filing an appeal. For these reasons, we are asking that this revised TCU Exception 5 roster be ruled null and void.

We are respectfully confident that you will review these claims and a proper resolution will be reached.

Thank you for your consideration,


James Reshard
Assistant Stationmaster Representative

# EXHIBIT J

-------- Original Message --------
Subject: Reply to ASM Seniority
From: Union <blockopr@yahoo.com>
Date: Mon, August 11, 2014 2:42 pm
To: James reshard <jimmy@solaflare.com>
Cc: "decarlow@TCUnion.org" <decarlow@TCUnion.org>, Artie
<marateaa@tcunion.org>


Brother Reshard,

I am in receipt of your letter dated 8/11/14. Several Members of your craft
have also inquired about these same issue[s] and were responded to in kind
by National Vice President A. Maratea and National Representative W.
DeCarlo. Brother Maratea and Brother DeCarlo have thoroughly investigated
and reviewed this issue and came to the same conclusion; it may not be the
answer you are seeking but it is the proper interpretation and
implementation of the Controlling Agreement. I have included with this email
one of several emails/mail the Organization had received and responded
over this issue.

Brother Reshard, I have fielded several calls and spoken to many ASM's in
person over this issue. This has not fallen on deaf ears - I do understand
your frustration and your fellow Brother's and Sister's frustration. However,
the Organization's mission is to uphold the Controlling Agreement and as a
duly accredited representative of this Organization it is my job to ensure that
it is upheld.

Fraternally Yours,

James E. Figueroa
Division Chairman
TCU/IAM Unit 167
1(631) 525 3533

**From:** "DeCarlo, William" <decarlow@TCUnion.org>
**Date:** July 15, 2014 at 1:02:25 PM EDT
**To:** kenward360 <kenward360@gmail.com>, "Maratea, Arthur"
<marateaa@TCUnion.org>
**Cc:** JAMES FIGUEROA <blockopr@yahoo.com>
**Subject: RE:**

Kendall,
This is in your response to your July 12, 2014 email.  Your request to have a
separate seniority roster for the ASM's is in direct conflict with Rule 7 of the